UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHEN GASPERINI,

                          Plaintiff,

           -v-                                          CIVIL ACTION NO.: 20 Civ. 6022 (SLC)

COMMISSIONER OF SOCIAL SECURITY,                        <u>**OPINION & ORDER**</u>

                          Defendant.

**SARAH L. CAVE**, United States Magistrate Judge.

## I.     INTRODUCTION

Plaintiff Stephen Gasperini ("Mr. Gasperini") commenced this action pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g). Mr. Gasperini seeks review of the decision by the Commissioner (the "Commissioner") of the Social Security Administration ("SSA"), denying his application for Disability Insurance Benefits ("DIB") under the Act.  Mr. Gasperini contends that the decision of the Administrative Law Judge dated April 24, 2019 (the "ALJ Decision") "was erroneous, not supported by substantial evidence in the record, and/or contrary to law[,]" and asks the Court to reverse the Commissioner's finding that he was not disabled and remand to the Commissioner for an award of benefits, or a new hearing.  (ECF No. 1 at 2).

The parties have cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  On May 3, 2021, Mr. Gasperini moved for judgment on pleadings. (ECF No. 25 ("Mr. Gasperini's Motion")).  On July 1, 2021, the Commissioner cross-moved.

(ECF No. 27 (the "Commissioner's Motion")).  For the reasons set forth below, Mr. Gasperini's

Motion is DENIED and the Commissioner's Motion is GRANTED.

## II.   BACKGROUND

### A.  Procedural Background

On May 17, 2017, Mr. Gasperini filed an application for DIB, alleging disability due to

injuries to his left shoulder and arm, both knees, and right hip, as well as depression and anxiety,

with an onset date of July 1, 2014 (the "Onset Date").  (Administrative Record ("R.") (ECF No. 24)

56–57, 154–58).  On August 31, 2017, the SSA denied Mr. Gasperini's application.  (R. 56–71).

At Mr. Gasperini's request, on February 25, 2019, ALJ Susan Toth conducted a hearing by

videoconference (the "Hearing").  (R. 29–55, 88–90).  On April 24, 2019, ALJ Toth issued the

Decision finding that Mr. Gasperini was not disabled under the Act.  (R. 13–27).  On June 2, 2020,

the ALJ Decision became the final decision of the Commissioner when the Appeals Council denied

Mr. Gasperini's request for review.  (R. 1–6).

### B.  Factual Background

#### 1.  Non-medical evidence

Mr. Gasperini was born in 1977 and was 37 years old on the alleged Onset Date.  (R. 56).

He completed high school and one year of college.  (R. 69, 172).  From January 2001 to December

2011, Mr. Gasperini worked as a bartender.  (R. 68, 172).  From April 2012 to July 2014, he worked

for the New York State Department of Health as a safety security officer at Helen Hayes Hospital.

(R. 42, 68, 172, 374).  On July 1, 2014, Mr. Gasperini was injured at work while attempting to

restrain an aggressive patient, resulting in tears to his left rotator cuff and bicep (the "Injury").

(R. 37–38, 264).

### 2. **Medical evidence**

Mr. Gasperini and the Commissioner have each provided summaries of the medical evidence in the Record. (<u>See</u> ECF Nos. 26 at 6–11; 28 at 8–17). The Court adopts both parties' summaries as accurate and complete and sets forth those facts relevant to the Court's analysis. (<u>See</u> § IV.B, <u>infra</u>).

## C. **Administrative Proceedings**

### 1. **The Hearing**

On February 25, 2019, ALJ Toth conducted the Hearing, at which Mr. Gasperini was represented by counsel. (R. 30–55). At the start of the Hearing, the ALJ asked Mr. Gasperini's counsel whether the record was complete. (R. 32). Counsel indicated that they were "waiting for some additional records" and asked the ALJ to keep the record open for 30 days, which ALJ Toth agreed to do. (R. 32).

During his testimony, Mr. Gasperini described the Injury and stated that his impairments "snowballed from there." (R. 37–38). He testified that, after the Injury, he began experiencing knee and hip pain, as well as weight gain and "psychological" issues. (R. 38). Regarding his weight gain, Mr. Gasperini testified that he currently weighed 310 pounds and that, prior to the Injury, his weight "would fluctuate between 200 and 250" pounds. (R. 36). Mr. Gasperini stated that, due to his impairments, he had difficulties standing, sitting, and walking, with standing being "easier" than walking. (R. 39). He also stated that, at the time of the Hearing, the "most pain" he felt was in his right hip (R. 38), and that he was considering hip surgery and would be seeking "a third opinion . . . within the next week or so." (R. 45).

Vocational Expert ("VE") Theresa Wolford also testified at the Hearing.  (R. 49–53). VE Wolford classified Mr. Gasperini's past work as that of a "manager food service," Dictionary of Occupational Titles ("DOT")[1] code 187.167-106, and a "security guard," DOT code 372.667-034, both "light" category positions.[2]  (R. 50).  ALJ Toth then asked VE Wolford to consider a hypothetical individual of Mr. Gasperini's age, education, and past work who:

> can lift, carry, push, and or pull 20 pounds occasionally and 10 pounds frequently; can stand or walk in combination for six hours in an eight-hour workday[;] . . . can sit for six hours in an eight-hour workday; . . . needs the opportunity to alternate positions between sitting and standing as frequently as every 30 minutes without a loss of productivity[;] . . . can occasionally climb ramps and stairs; may not climb ladders, ropes, and scaffolds; can frequently stoop[;] . . . can occasionally kneel, crouch, and crawl[;] . . . can tolerate occasional exposure to extreme cold, vibration, and workplace hazards, such as unprotected heights and machinery with exposed moving mechanical parts[;] . . . can frequently reach overhead with the right upper extremity[;] . . . can understand and remember simple and intermediate instructions, but can only maintain concentration, persistence, and pace for simple tasks[;] . . . can occasionally interact with supervisors and coworkers, but may not provide customer service to the general public[;] . . . can make simple, work-related decisions and can adapt to changes in the work environment, which are consistent with the aforementioned limitations.

(R. 50–51).  The ALJ asked VE Wolford if this hypothetical individual could perform Mr. Gasperini's past work, and VE Wolford testified that "they could not." (R. 51).  ALJ Toth then asked the VE whether there were other jobs in the national economy that the hypothetical individual could perform.  (R. 51).  VE Wolford noted that, because "the DOT and the SCO

---

[1] The DOT is "an accepted basis for vocational opinion according to the Commissioner's rules."  Henry v. Colvin, 12 Civ. 6822 (KBF), 2015 WL 9238959, at *7 n.7 (S.D.N.Y. Dec. 17, 2015) (citing Brault v. Comm'r Soc. Sec. Admin., 683 F.3d 443, 446 (2d Cir. 2012)).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b).

[Selected Characteristics of Occupations[3]] do not address alternating between sitting and standing" or "between the direction of reaching or which extremity[,]" she was "relying on [her] experience with regard to those limitations."  (R. 51–52).  The VE then testified that this hypothetical individual could perform the following three positions:

- Folding machine operator, DOT code 208.685-014, a light position of which there were approximately 119,960 in the national economy;

- Office Helper, DOT code 239.567-010, a light position of which there were approximately 85,620 in the national economy; and

- Mail clerk, DOT code 209.687-026, a light position of which there were approximately 69,822 in the national economy.

(R. 52).  The ALJ then asked VE Wolford, "if the individual previously described could only stand or walk in combination for a total of four hours in an eight-hour workday instead of six, would that change your response to the first hypothetical, assuming everything else remained the same?"  (R. 52).  The VE responded that the three jobs "would still remain because that would still be consistent with the alternating sitting and standing."  (R. 52).  VE Wolford confirmed that her testimony was "consistent with the DOT and the SCO except as otherwise noted[.]"  (R. 53).

## 2.  The ALJ Decision and Appeals Council review

On April 24, 2019, ALJ Toth issued her Decision finding that Mr. Gasperini had not been disabled since the Onset Date and denying his application for DIB.  (R. 13–27).  The ALJ Decision reflects that, after the Hearing, the Commissioner received additional medical records, which

---

[3] The SCO "is a companion publication to the [DOT]."  <u>Spears v. Colvin</u>, No. 15-CV-6236-FPG, 2016 WL 4973890, at *3 (W.D.N.Y. Sept. 19, 2016).

were incorporated into the Record. (R. 27). This included progress notes from Jason Fond, M.D.,

who treated Mr. Gasperini for right hip and knee pain between February 9, 2018 and October 24,

2018. (See R. 499–513).

ALJ Toth followed the five-step disability determination process. At step one, the ALJ

found that Mr. Gasperini had not engaged in substantial gainful activity since the alleged Onset

Date. (R. 15). At step two, ALJ Toth found that Mr. Gasperini had the following severe

impairments: posttraumatic left shoulder arthropathy; right knee meniscal tear; right knee

Osgood Schlatter disease; right hip degenerative changes; obesity; posttraumatic stress disorder;

major depressive disorder; generalized anxiety disorder; attention deficit hyperactivity disorder;

and binge eating disorder. (R. 15–16).

At step three, ALJ Toth found that Mr. Gasperini did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed

impairments in the Act. (R. 16–17). (The impairments listed in 20 CFR Appendix 1, Subpart P,

Part 404 are known as the "Listings."). Specifically, the ALJ found that, considered singly or in

combination, Mr. Gasperini's physical impairments did not satisfy Listing 1.02 for major joint

dysfunction, and his mental limitations did not satisfy Listings 12.04 (depressive, bipolar and

related      disorders),      12.06      (anxiety      and      obsessive-compulsive      disorders),

12.11 (neurodevelopmental disorders), 12.13 (eating disorders), or 12.15 (trauma and stressor-

related disorders). (R. 16–18).

ALJ Toth then assessed Mr. Gasperini's RFC as being able to "perform light work as defined

in 20 CFR 404.1567(b) in that he can lift, carry, push and/or pull 20 pounds occasionally, and 10

pounds frequently; can stand or walk in combination for 4 hours in an 8-hour workday; and can

sit for 6 hours in an 8-hour workday." (R. 18). The ALJ also found, however, that Mr. Gasperini's

RFC was subject to several limitations, and, in particular, determined that Mr. Gasperini:

> needs the opportunity to alternate positions between sitting and standing as frequently as every 30 minutes, without a loss of productivity[;] . . . can occasionally climb ramps and stairs, but may not climb ladders, ropes and scaffolds[;] . . . can frequently stoop, but only occasionally kneel, crouch, and crawl[;] . . . can tolerate occasional exposure to extreme cold, vibration and workplace hazards, such as unprotected heights and machinery with exposed moving mechanical parts[;] . . . can frequently reach overhead with the left upper extremity[;] . . . can understand and remember simple and intermediate instructions, but can only maintain concentration, persistence and pace for simple tasks[;] . . . can occasionally interact with supervisors and co-workers, but may not provide customer service to the general public[;] . . . can make simple work related decisions[;] and can adapt to changes in the work environment which are consistent with the aforementioned limitations.

(R. 18).

At step four, ALJ Toth concluded that Mr. Gasperini was unable to perform his past

relevant work. (R. 21–22). At step five, the ALJ concluded, based on the testimony of VE Wolford,

"that, considering [Mr. Gasperini]'s age, education, work experience, and [RFC], [he] is capable

of making a successful adjustment to other work that exists in significant numbers in the national

economy[,]" and, therefore, that Mr. Gasperini was not disabled. (R. 23).

On June 2, 2020, the Appeals Council denied Mr. Gasperini's request for review of ALJ

Toth's decision. (R. 1–6).

### III. **LEGAL STANDARDS**

#### A. **Standard of Review**

Under Rule 12(c), a party is entitled to judgment on the pleadings if he establishes that

no material facts are in dispute and that he is entitled to judgment as a matter of law.

See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999); Morcelo v. Barnhart, No. 01 Civ. 743 (RCC) (FM), 2003 WL 470541, at *4 (S.D.N.Y. Jan. 21, 2003).

The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  A court may set aside the Commissioner's decision denying SSI benefits if it is not supported by substantial evidence or was based on legal error.  See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009).  Judicial review, therefore, involves two levels of inquiry.  First, the Court must decide whether the ALJ applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008).  Second, the Court must decide whether the ALJ's decision was supported by substantial evidence.  Id.  "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Longbardi v. Astrue, No. 07 Civ. 5952 (LAP), 2009 WL 50140, at *21 (S.D.N.Y. Jan. 7, 2009).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008) (internal citations omitted).  The substantial evidence test applies not only to the factual findings, but also to the inferences and conclusions drawn from those facts.  See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999).  In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the claim fairly.  See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999).  The Commissioner, not the Court, resolves evidentiary conflicts and

appraises the credibility of witnesses, including the claimant.  See, e.g., Veino v. Barnhart, 312

F.3d 578, 588 (2d Cir. 2002); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

    **B.**  **Eligibility for Benefits**

For purposes of SSI and DIB benefits, one is "disabled" within the meaning of the Act, and

thus entitled to such benefits, when she is "unable to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not

less than twelve months."  42 U.S.C. § 1382c(3)(A).  The Act also requires that the impairment be

"of such severity that [the claimant] is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy."  42 U.S.C. § 1382c(3)(B).  In reviewing a claim

of disability, the Commissioner must consider:  "(1) objective medical facts; (2) diagnoses or

medical opinions based on those facts; (3) subjective evidence of pain and disability testified to

by claimant and other witnesses; and (4) the claimant's background, age, and experience."

Williams ex rel. Williams v. Bowen, 859 F.2d 255, 259 (2d Cir. 1988).

Under the applicable regulations, an alleged disability is evaluated under the sequential

five-step process set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v).  The Second Circuit has described

the process as follows:

> First, the Secretary considers whether the claimant is currently engaged in
> substantial gainful activity.  If not, the Secretary next considers whether the
> claimant has a "severe impairment" which significantly limits his physical or
> mental ability to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on the medical evidence,
> the claimant has an impairment which is listed in Appendix 1 of the regulations.  If
> the claimant has such an impairment, the Secretary will consider him disabled
> without considering vocational factors such as age, education, and work

experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the <u>fourth</u> inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  <u>Finally</u>, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the Claimant could perform.

<u>Bush v. Shalala</u>, 94 F. 3d 40, 44–45 (2d Cir. 1996) (quoting <u>Rivera v. Schweiker</u>, 717 F.2d 719, 722 (2d Cir. 1983)).

At the first four steps, the claimant bears the burden of proof.  At the fifth step, the burden shifts to the Commissioner to demonstrate that there are jobs in the national economy that the claimant can perform.  <u>See</u>, <u>e.g.</u>, <u>Poupore v. Astrue</u>, 566 F.3d 303, 306 (2d Cir. 2009).  In meeting the burden of proof at the fifth step, the Commissioner can usually rely on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, known as "the Grid." <u>Zorilla v. Chater</u>, 915 F. Supp. 662, 666–67 (S.D.N.Y. 1996).

## IV.    <u>DISCUSSION</u>

Mr. Gasperini raises a single challenge to the ALJ Decision, arguing that the ALJ's physical RFC determination is not supported by substantial evidence.  (ECF Nos. 26 at 15–18; 29 at 1–3). The Commissioner argues, <u>inter alia</u>, that substantial evidence supports ALJ Toth's physical RFC determination.  (ECF No. 28 at 20–25).

For the reasons set forth below, the Court agrees with the Commissioner and finds that the ALJ's RFC determination is supported by substantial evidence.

### A.  <u>RFC Determinations</u>

The RFC determination represents "the most [a claimant] can still do despite [his] limitations," based on all the relevant evidence in the record.  20 C.F.R. § 404.1545(a)(1).

It reflects the Commissioner's assessment of "the 'nature and extent' of a claimant's physical limitations and capacity for work activity on a regular and continuing basis." Elliott v. Colvin, No. 13-CV-2673 (MKB), 2014 WL 4793452, at *19 (E.D.N.Y. Sept. 24, 2014) (quoting 20 CFR § 404.1545(b)). "The RFC determination is reserved to the Commissioner." Ramirez v. Saul, No. 20 Civ. 2922 (NSR) (JCM), 2021 WL 4943551, at *11 (S.D.N.Y. July 2, 2021) (citing Monroe v. Comm'r of Soc. Sec., 676 Fed. App'x 5, 8 (2d Cir. 2017)).

"The RFC determination 'must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence.'" Acevedo v. Saul, No. 20 Civ. 8027 (GWG), 2021 WL 6110933, at *8 (S.D.N.Y. Dec. 27, 2021) (quoting Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). "While an ALJ will consider medical opinions on a plaintiff's functioning, ultimately the ALJ is tasked with reaching an RFC assessment based on the record as a whole." McKnight v. Comm'r of Soc. Sec., No. 17 Civ. 1054 (CS) (JCM), 2018 WL 4062705, at *11 (S.D.N.Y. Aug. 24, 2018) (citing 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546(c)). "It is the Commissioner's role to weigh medical opinion evidence and to resolve conflicts in that evidence." Milliken v. Saul, No. 19 Civ. 09371 (PED), 2021 WL 1030606, at *8 (S.D.N.Y. Mar. 17, 2021) (citing Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012)). "It is ultimately the claimant's burden to prove that [he or she] should have a more restrictive RFC than the one assessed by the ALJ." Villalobo v. Saul, No. 19 Civ. 11560 (CS) (JCM), 2021 WL 830034, at *16 (S.D.N.Y. Feb. 9, 2021) (citing Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018)).

**B. Analysis**

As discussed above, the ALJ determined that Mr. Gasperini has the RFC to perform light

work subject to several limitations, including that Mr. Gasperini:

> can stand or walk in combination for 4 hours in an 8-hour workday; . . . needs the
> opportunity to alternate positions between sitting and standing as frequently as
> every 30 minutes, without a loss of productivity[;] . . . can occasionally climb ramps
> and stairs, but may not climb ladders, ropes and scaffolds[;] . . . can frequently
> stoop, but only occasionally kneel, crouch, and crawl[;] . . . can tolerate occasional
> exposure to extreme cold, vibration and workplace hazards, such as unprotected
> heights and machinery with exposed moving mechanical parts[;] . . . can
> frequently reach overhead with the left upper extremity[;] . . . can understand and
> remember simple and intermediate instructions, but can only maintain
> concentration, persistence and pace for simple tasks[;] . . . can occasionally
> interact with supervisors and co-workers, but may not provide customer service
> to the general public[;] . . . can make simple work related decisions[;] and can
> adapt to changes in the work environment which are consistent with the
> aforementioned limitations.

(R. 18).

In reaching her RFC determination, the ALJ considered, inter alia, Mr. Gasperini's physical

impairments.  In particular, she acknowledged Mr. Gasperini's "history of left shoulder injury[,]"

but noted that  medical records indicate that he "exhibits full range of motion in his left shoulder,

has normal motor and grip strength, [] preserved manual dexterity in his left upper extremity,

and does not exhibit any sensory or reflect deficits."  (R. 19–20 (citing R. 292, 388–89)).  The ALJ

also acknowledged  Mr. Gasperini's "history of right knee pain" and that he underwent a

meniscectomy on March 3, 2017, but noted that subsequent examinations showed "normal gait"

and "no need for an assistive device, and full range of motion in [his] right knee."  (R. 20 (citing

R. 246, 388)).  Finally, ALJ Toth acknowledged Mr. Gasperini's "significant right hip pain," but

noted that "diagnostic imaging of his hip has found only mild degenerative changes to the joint"

and that, while he "does exhibit somewhat reduced (4/5) strength in his lower extremities, [] his

physical examinations have found normal gait, with no sensory or reflex deficits." (R. 20 (citing R. 241, 385, 388–89)).

The ALJ Decision also reflects that "[t]he effects of [Mr. Gasperini's] obesity [were] considered in determining his [RFC]." (R. 20). ALJ Toth noted that Mr. Gaperini's "knee and hip pain is likely exacerbated by his weight." (R. 20). The ALJ also noted, however, that, "despite his obesity, [Mr. Gasperini]'s physical examination findings have been relatively good." (R. 20).

As to the medical opinions in the Record, ALJ Toth "found somewhat persuasive the opinion of consulting physician Nina Spooner, M.D." (R. 21 (citing R. 384–93)). Following her examination of Mr. Gasperini on July 31, 2017, Dr Spooner opined, inter alia, that Mr. Gasperini "has marked limitation for kneeling and squatting" and "moderate limitation for sitting, standing, walking, climbing stairs, lifting, and carrying." (R. 389). The ALJ noted that "the terms 'marked' and 'moderate,' used by Dr, Spooner in discussing [Mr. Gasperini]'s exertional and postural abilities[,] are not defined." (R. 21).

The ALJ found "generally persuasive" the opinion of State agency medical consultant S. Gandhi, M.D., who opined in August 2017 that Mr. Gasperini can perform a range of light exertional work. (R. 21 (citing R. 56–70)). Dr. Gandhi, who reviewed Mr. Gasperini's medical records—including Dr. Spooner's opinion—but did not perform a physical examination, opined that Mr. Gasperini could: lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk with normal breaks for six hours in an eight-hour workday; sit with normal breaks for six  hours in an eight-hour workday; balance and push and/or pull without limitation; occasionally kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; and frequently stoop. (R. 63–64). The ALJ noted that "Dr. Gandhi's opinion is well-explained, and

was consistent with the evidence at the time that it was rendered." (R. 21). "In light of subsequently received evidence concerning [Mr. Gasperini]'s right knee and hip, however," ALJ Toth "adopted greater limitations on standing and walking than were opined to by Dr. Gandhi." (R. 21; see R. 18 (finding that Mr. Gasperini has the RFC to "stand or walk in combination for 4 hours in an 8-hour workday")).

To support his argument that the ALJ's physical RFC determination is not supported by substantial evidence, Mr. Gasperini raises several discrete issues. (See ECF Nos. 26 at 15–18; 29 at 1–3). The Court addresses each issue in turn.

Mr. Gasperini argues that "the record is devoid of any medical (or other) opinion indicating that [he] can perform most of the exertional requirements of light work such as 'lifting no more than 20 pounds at a time with frequent listing or carrying of objects weighing up to 10 pounds' and walking or standing for approximately 6 hours of an 8-hour day" (ECF No. 26 at 15 (quoting 20 C.F.R. § 404.1567(b)). To the contrary, however, Dr. Gandhi offered exactly that opinion. As noted above, and as the ALJ Decision reflects, Dr. Gandhi found that Mr. Gasperini can perform light work (R. 69; see R. 21), and specifically opined that Mr. Gasperini has the RFC, inter alia, to lift and/or carry 20 pounds occasionally and ten pounds frequently, and to stand and/or walk with normal breaks for six hours in an eight-hour workday. (R. 63). Accordingly, Mr. Gasperini's claim that the Record lacks such an opinion is simply incorrect.[4]

---

[4] Dr. Spooner's opinion as to Mr. Gasperini's "moderate limitation for sitting, standing, walking, climbing stairs, lifting, and carrying" (R. 389) is also consistent with the requirements of light work. See Renee L. v. Comm'r of Soc. Sec., No. 5:20-CV-00991 (TWD), 2022 WL 685285, at *9 (N.D.N.Y. Mar. 8, 2022) ("Courts in this circuit have consistently found that moderate limitations in a plaintiff's ability to perform exertional activities are consistent with an RFC for light work.") (collecting cases).

Although Mr. Gasperini does not explicitly challenge the weight ALJ Toth afforded to the opinion of Dr. Gandhi, a non-examining State Agency physician, the Court finds that "the ALJ reasonably relied on" it. Joseph F. v. Comm'r of Soc. Sec., No. 20 Civ. 4356 (GRJ), 2022 WL 355918, at *8 (S.D.N.Y. Feb. 7, 2022) (affirming ALJ's reliance on non-examining State Agency physician's opinion that was "supported by the objective record"). "[I]t is well-established that '[s]tate agency physicians are qualified as experts in the evaluation of medical issues in disability claims,' and as such, 'their opinions may constitute substantial evidence if they are consistent with the record as a whole.'" Distefano v. Berryhill, 363 F. Supp. 3d 453, 474 (S.D.N.Y. 2019) (quoting Leach ex rel. Murray v. Barnhart, 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004)); see Ortiz v. Comm'r of Soc. Sec., 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018) ("[T]he opinion of a non-examining medical expert . . . may be considered substantial evidence if consistent with the record as a whole."). Here, the ALJ reasonably concluded that Dr. Gandhi's opinion "was consistent with the evidence at the time it was rendered" (R. 21), which showed, inter alia, that Mr. Gasperini's exhibited full range of motion and no sensory or reflect deficits in left shoulder, full range of motion and normal gait as to his right knee, and only mild degenerative changes and slightly reduced strength with respect to his right hip. (See R. 241, 292, 385, 388–89)).

Moreover, as the Commissioner points out (ECF No. 28 at 20 n.4; id. at 22), ALJ Toth's RFC determination was more restrictive than what Dr. Gandhi assessed, and it incorporated limitations reflecting that Mr. Gasperini is not able to perform the full range of light work. (R. 18). In particular, the ALJ acknowledged "subsequently received evidence concerning [Mr. Gasperini]'s right knee and hip," and "adopted greater limitations on standing and walking than were opined to by Dr. Gandhi" (R. 21), finding that Mr. Gasperini "can stand or walk in

combination for 4 hours in an 8-hour workday[.]"  (R. 18).  Accordingly, even if Mr. Gasperini were correct that the Record lacks opinion evidence regarding his ability to meet the standing and walking requirements of light work, his argument is misplaced and does not provide a basis for remand.

The Court is also not persuaded by Mr. Gasperini's argument that "[i]t is not entirely clear what the ALJ means by 'stand or walk in combination[.]'"  (ECF No. 26 at 16).  As discussed above, "a job is in [the light-work] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  SSR 83-10 expands on the walking and standing requirements of light work, and provides that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251, at *6 (emphasis added).  Here, while ALJ Toth did not quote from the Commissioner's Rules directly, her use of the phrase "stand or walk in combination" is no less clear than SSR 83-10's use of the phrase "standing or walking, off and on."  Mr. Gasperini cites no authority to suggest that this slight deviation from the language of the Rules is a basis for remand, and the Court declines to create that authority here.

Equally unpersuasive is Mr. Gasperini's claim that the ALJ "did not provide any explanation or support" for her determination that his RFC is limited to standing or walking in combination for four hours in an eight-hour workday.  (ECF No. 26 at 16).  As discussed above, ALJ Toth explained that she imposed this limitation, which was more restrictive that Dr. Gandhi's opinion, based on "subsequently received evidence concerning [Mr. Gasperini]'s right knee and hip[.]"  (R. 21).  In this regard, Mr. Gasperini's argument that "the ALJ's decision does not include

any meaningful discussion of Dr. Fond's care and treatment of Mr. Gasperini's hip impairment and it is entirely unclear if the ALJ even considered Dr. Fond's recent treatment of Mr. Gasperini's hip" is misplaced. (ECF No. 26 at 16). Not only is it apparent from the ALJ Decision that she <u>did</u> consider these treatment records (which were received after the Hearing), ALJ Toth specifically "adopted greater limitations on standing and walking than were opined to by Dr. Gandhi" based on those records. (R. 18; <u>see</u> R. 30, 499–513).). The fact that the ALJ referred to these records generally and not by their exhibit number is not a basis for remand. <u>See</u> <u>Brault v. Social Sec.</u> <u>Admin</u>, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." (internal quotation marks and citation omitted)).

Mr. Gasperini argues that the ALJ's RFC determination is inconsistent with Dr. Spooner's opinion, which ALJ Toth found to be "somewhat persuasive." (R. 21). Specifically, Mr. Gasperini notes that "Dr. Spooner opined that Mr. Gasperini had <u>marked</u> limitations for kneeling and squatting, but the ALJ somehow determined that Mr. Gasperini can occasionally kneel, crouch or crawl and the ALJ did not include any limitation for squatting." (ECF No. 29 at 2).[5]

The Court agrees that Dr. Spooner's opinion does not support the ALJ's RFC determination in this respect. Indeed, "courts have found that a physician's assessment that a plaintiff has 'marked' limitations is not necessarily consistent with an RFC limiting the Plaintiff to 'occasionally' performing those same activities." <u>Buczynski v. Comm'r of Soc. Sec.</u>, No. 1:17-CV-01126-MAT, 2019 WL 5540880, at *4 (W.D.N.Y. Oct. 28, 2019) (collecting cases); <u>see</u> <u>Edwards v.</u>

---

[5] "While SSA Rulings do not define the term 'squat,' it is generally considered synonymous with 'crouch' for purposes of an RFC determination." <u>Coleman v. Saul</u>, No. 19-CV-1508L, 2020 WL 6465434, at *3 (W.D.N.Y. Nov. 3, 2020) (collecting cases).

Commissioner, No. 16-cv-0948-MJR, 2018 WL 5859518, at *5 (W.D.N.Y. Nov. 9, 2018) ("If the ALJ is in agreement that plaintiff has a marked limitation as to climbing stairs, remand is necessary for the ALJ to explain how a marked limitation in that area is consistent with occasional stair climbing."); Oney v. Colvin, No. 1:14-CV-00720 (MAT), 2017 WL 1054914, at *2-3 (W.D.N.Y. Mar. 21, 2017) (finding physician's opinion that plaintiff had "marked" limitations in moving her head, lifting, carrying and bending were "too vague" to support ALJ's RFC determination that the plaintiff could perform those functions occasionally).  While Dr. Gandhi opined that Mr. Gasperini is able to kneel, crouch, and crawl occasionally, the Court agrees with Mr. Gasperini that this conclusion was not consistent with Dr. Spooner's opinion or with other Record evidence.  (ECF No. 29 at 2; see R. 184, 196, 253, 387, 389, 503).  Accordingly, ALJ Toth's determination that Mr. Gasperini could occasionally kneel, crouch, and crawl was not supported by substantial evidence.

The Court concludes, however, that the ALJ's error with respect to Mr. Gasperini's kneeling, crouching, and crawling limitations was harmless, because the jobs identified by the VE do not require these types of movements.  At the Hearing, VE Wolford testified that an individual with Mr. Gasperini's RFC would be able to perform the positions of folding machine operator (DOT code 208.685-014), office helper (DOT code 239.567-010), and mail clerk (DOT code 209.687-026).  (R. 50–52).  According to the DOT, none of these positions requires kneeling, crouching, or crawling.  See DOT Codes 208.685-014, 1991 WL 671754; 239.567-010, 1991 WL 672232; 209.687-026, 1991 WL 671813.  Accordingly, the ALJ's failure to properly assess Mr. Gasperini's abilities to kneel, crouch, and crawl was harmless and "does not require remand" since the ALJ would reach the same conclusion.  John S. v. Kijakazi, No. 1:20-CV-1468 (GTS), 2022 WL 866548, at *11 (N.D.N.Y. Mar. 23, 2022) (finding "any failure to assess functions such as

stooping, crouching, and crawling" to be harmless where "the positions identified by the VE [did] not require these types of movements") (citing <u>Zabala v. Astrue</u>, 595 F.3d 402, 409 (2d Cir. 2010) ("Remand is unnecessary, however, where application of the correct legal standard could lead to only one conclusion.") (citation and alterations omitted).

The Court also rejects Mr. Gasperini's argument that "the ALJ failed to provide any information regarding how he [sic] considered Mr. Gasperini's obesity" in determining his RFC. (ECF Nos. 26 at 18).  As a court in this District has explained:

> obesity can cause limitation of function, as it may impede a claimant's ability to do sustained work activity on a regular and continuing basis and also exacerbate the effects of other impairments. As such, obesity is a medically determinable impairment and must be considered in evaluating a Plaintiff's R[F]C.  This does not mean, however, that an ALJ must always explicitly discuss a claimant's obesity in his or her RFC determination; rather, an ALJ's determination can reflect an appropriate consideration of obesity if it adopts the limitations suggested by physicians who have directly considered the effects of obesity in their opinions.

<u>Wilson v. Colvin</u>, No. 14 Civ. 5666 (DF), 2015 WL 5786451, at *30 (S.D.N.Y. Sept. 29, 2015) (internal citations and alterations omitted).

Here, in addition to including obesity as a severe impairment at step two (R. 16), ALJ Toth expressly considered Mr. Gasperini's obesity in making her RFC determination.  Indeed, she specifically noted Mr. Gasperini's height, weight, and BMI, and stated that the "effects of [his] obesity have been considered in determining his [RFC]."  (R. 20).  The ALJ found that Mr. Gasperini's "knee and hip pain is likely exacerbated by his weight[,]" but noted that, "despite his obesity, [Mr. Gasperini]'s physical examination findings have been relatively good."  (R. 20; <u>see</u> R. 19–20).  She also credited the opinion of Dr. Spooner, who specifically noted Mr. Gasperini's obesity in her assessment of his functional limitations.  (R. 21; <u>see</u> R. 388–89). Accordingly, the Court finds that "the ALJ adequately considered the effect of [Mr. Gasperini]'s

obesity on [his] RFC." <u>Ferreras-Matos v. Comm'r of Soc. Sec.</u>, No. 20 Civ. 7106 (NSR) (JCM), 2021 WL 7287630, at *20 (S.D.N.Y. Nov. 15, 2021), <u>adopted by</u>, 2022 WL 292921 (S.D.N.Y. Jan. 31, 2022). "Additionally, [Mr. Gasperini] has also not established how his obesity further limited his functioning, rendering any potential error harmless." <u>Sidney v. Comm'r of Soc. Sec.</u>, No. 18-CV-645 (JMA), 2020 WL 7481329, at *8 (E.D.N.Y. Dec. 18, 2020) (citing <u>White v. Berryhill</u>, 753 F. App'x 80, 81 (2d Cir. 2019) (find that, "because [the plaintiff] never specified how his obesity further limited his functioning, any error on the ALJ's part was harmless")).

Finally, Mr. Gasperini cites to several pieces of Record evidence that appear to contradict the ALJ's RFC assessment.  Specifically, he notes that, "[i]n a written function report, [he] reported that he has difficulty lifting and standing and he is unable to kneel or squat." (ECF No. 26 at 16 (citing R. 184)).  Similarly, he notes that, at the Hearing, he testified that he cannot walk very well, has a bad limp, has trouble sitting for long, and sometimes "just can't do anything." (<u>Id.</u> (citing R. 39, 44)).  Mr. Gasperini also notes that, at an evaluation on June 29, 2015, Scott V. Haig, M.D., indicated that, due to his left shoulder injury, Mr. Gasperini was "only able to lift about 5 pounds without getting pain." (R. 364).

In this respect, Mr. Gasperini essentially challenges the ALJ's factual findings and weighing of the conflicting medical evidence.  "However, in determining whether the ALJ's factual findings are supported by substantial evidence, the reviewing court may not reweigh the evidence or substitute its own opinion for that of the ALJ." <u>Gilliam v. Comm'r of Soc. Sec.</u>, No. 17 Civ. 3764 (ER) (BCM), 2018 WL 9837921, at *10 (S.D.N.Y. Sept. 5, 2018), <u>adopted sub nom.</u> <u>Gilliam v. Berryhill</u>, 2019 WL 5188946 (S.D.N.Y. Oct. 15, 2019).  Indeed, "[i]t is for the SSA, and not this court, to weigh the conflicting evidence in the record." <u>Schaal v. Apfel</u>, 134 F.3d 496, 504 (2d Cir.

1998); see Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").  "[O]nce an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (quotation marks and citation omitted).   Having determined that the ALJ's RFC determination is supported by substantial evidence, and considering the "very deferential standard of review" applicable to this case, the Court declines to disturb the ALJ's factual determinations.  Brault, 683 F.3d at 448 ("The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable factfinder would have to conclude otherwise.") (citation omitted).

## V.    CONCLUSION

For the reasons set forth above, Mr. Gasperini's Motion is DENIED and the Commissioner's Motion is GRANTED.  The Clerk of Court is respectfully directed to terminate ECF Nos. 25 and 27, and to close this case.

Dated:        New York, New York
              March 31, 2022

SO ORDERED.

_____
SARAH L. CAVE
**United States Magistrate Judge**